IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| DARREN SHAWN CARTER | ) | |
| | ) | |
| v. | ) | No. 2:16-0017 |
| | ) | |
| NANCY A. BERRYHILL | ) | |
|    Acting Commissioner of | ) | |
|    Social Security[1] | ) | |

## M E M O R A N D U M

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under Titles II and XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 16), to which Defendant has responded. Docket Entry No. 18.

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion (Docket Entry No. 16) is **DENIED** and the decision of the Commissioner is **AFFIRMED**.

### I. INTRODUCTION

Plaintiff filed an application for DIB and SSI on October 3, 2012. *See* Transcript of the Administrative Record (Docket Entry No. 10) at 86-87.[2] He alleged a disability onset date of

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right

July 1, 1998. AR 86-87.[3] Plaintiff asserted that he was unable to work because of lower back pain, pain in his bilateral wrists, and emphysema. AR 88.

Plaintiff's applications were denied initially and upon reconsideration. AR 86-87, 114-15. Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Donna Lefebvre on January 28, 2015. AR 40. The ALJ subsequently denied the claim on March 11, 2015. AR 22-24. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on January 8, 2016 (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on March 11, 2015, in which she made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since September 13, 2006, the alleged onset date. (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

\*\*\*

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease, lumbar degenerative disc disease, incisional hernia and obesity (20 CFR 404.1520(c) and 416.920(c)).

\*\*\*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

---

corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

[3] He later amended this to September 13, 2006 during the administrative hearing. AR 45.

CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

***

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could lift up to twenty pounds occasionally and ten pounds frequently. With normal breaks in an eight-hour day, he could stand and walk for up to six hours and sit for up to six hours. The claimant could occasionally balance, stoop, kneel, crouch, crawl and climb ramps, stairs, ladders, or scaffolds. Additionally, he could frequently finger objects with the right upper extremity. The claimant can perform jobs that do not require concentrated exposure to extreme heat or cold, excessive vibration and pulmonary irritants.

***

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

***

7. The claimant was born on September 24, 1960 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

***

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 13, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 27-34.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v.*

*Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g.*, *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g.*, *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing an entitlement to benefits by proving his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if he applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that he is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render him presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to his past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and

nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

**C. The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but determined at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform past relevant work. At step five, the ALJ found that Plaintiff's RFC would allow him to perform light work with express limitations to account for his severe impairments, and that considering his education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 27-34.

**D. Plaintiff's Assertions of Error**

Plaintiff argues that the ALJ erred by (1) improperly evaluating his credibility, and (2) failing to provide additional restrictions in the RFC involving his right upper extremity. DE 17 at 13-17. Plaintiff therefore requests that this case be reversed and benefits awarded pursuant to sentence four of 42 U.S.C. § 405(g), or, alternatively, remanded for further consideration. *Id.* at 17.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

8

*Id*. "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala,* 25 F.3d 316, 318 (1994). The court addresses Plaintiff's assertions of error below.

**1. Credibility.**

Plaintiff asserts that the ALJ committed reversible error by failing to properly evaluate his credibility. Plaintiff states that the ALJ "focused on a few points to the exclusion of the thrust of the substantial evidence," which Plaintiff claims is supportive of a finding that he experiences significant pain at the level of severity alleged throughout the administrative process. DE 17 at 13-16.

When evaluating a claimant's subjective complaints, the ALJ must look to see if the claimant has a medical impairment that could reasonably be expected to produce the pain alleged and consider all other evidence that would lead to a finding of disability. 20 C.F.R. § 404.1529(a). Notably, the Sixth Circuit has indicated that a reviewing court "should be particularly reluctant to substitute its judgment of the credibility of the claimant for that of the ALJ, since the ALJ has seen the claimant in the flesh and has had the opportunity to observe his demeanor." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841 (6th Cir. 1991) (citing *Gooch v. Sec'y of Health & Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987)) (per curiam), *cert. denied,* 484 U.S. 1075 (1988) (internal quotations omitted). In fact, the court "may not disturb [a

credibility determination] absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). However, the ALJ's assessment "must be supported by substantial evidence." *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

The ALJ in the instant matter concluded that Plaintiff's complaints of disabling pain were "partially credible" AR 31. To support this finding, the ALJ highlighted the mild findings derived from imaging studies of Plaintiff's lumbar and cervical spine, which included a small disc protrusion at the T11-12 level without spinal stenosis,[4] a small disc protrusion at the L5-S1 level without central or lateral stenosis, and a mild degree of disc desiccation at the L4-5 level without central or lateral stenosis. AR 29, 393-94. The ALJ also noted that despite Plaintiff's claim that he can only sit for 12 minutes, stand for 10 minutes, and walk for up to 10 minutes (AR 62-63, 65), as well as his claims that he cannot lift anything without experiencing pain, shave without the assistance of his wife, or stand to get dressed (AR 267-68), he consistently demonstrated a normal gait and station, normal motor strength in the wrists, elbows, ankles, and knees, full grip strength, and full range of motion of the cervical spine, knees, and ankles on examination. AR 29, 455.

The ALJ further observed that Plaintiff has received only conservative treatment for his back condition, which "suggests the absence of a disabling condition." *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013). *See also Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 473 (6th Cir. 2014) ("Had [the claimant] suffered from severe pain associated with

---

[4] Of note, the interpreting radiologist questioned whether this disc protrusion was actually present, noting that the purported disc protrusion was "of questionable mass-effect as it is so small and the neural foramina is patent," and later stating that the "questionable area in the disc could only be seen on one imaging plane and may therefore be an artifact." AR 392-93.

her back condition, the medical records would have revealed severe back or leg abnormalities ... recommendations for more aggressive treatment, and more significant doctor-recommended functional limitations."). Indeed, the court notes that Plaintiff's final documented visit at Cookeville Medical Center approximately two months after the alleged onset date revealed a decrease in tenderness over the thoracic spine and muscles and "much improved" pain symptoms following Plaintiff's "excellent [response]" to steroid medication. AR 397.

Despite such evidence, Plaintiff points to a report completed by Dr. Terrence Leveck following a consultative examination in November of 2012 to support his allegations of disabling pain. Yet it is precisely such findings that bolster the ALJ's conclusion that the evidence of record "simply do[es] not support the allegations of extreme pain and weakness or the presence of serious attributable exertional limitations." AR 31. As discussed by the ALJ, Dr. Leveck noted that Plaintiff demonstrated a normal gait and station, normal thoracolumbar spine flexion, and a "mildly positive" straight leg testing. AR 30, 455. Dr. Leveck additionally found that Plaintiff could stand independently on both lower extremities, squat without issue, and that Plaintiff had a full range of motion with respect to his cervical spine, the digits in both hands, his bilateral knees, and his bilateral ankles. AR 455. Dr. Leveck further found that Plaintiff had normal adduction, abduction, and external rotation. AR 455. Notably, Dr. Leveck's opinion regarding Plaintiff's physical limitations was *less* restrictive than the RFC ascribed by the ALJ, with Dr. Leveck indicating that during an eight-hour workday Plaintiff would be able to sit for eight hours, stand and walk for six hours, lift 10 pounds frequently, and lift 20 pounds occasionally.

AR 455.[5] All such findings contradict Plaintiff's claims that he has significant difficulty with squatting, bending, standing, walking, sitting, and kneeling. AR 267-74.

Plaintiff additionally relies on a Cookeville Medical Center office note from September 20, 2006 to support his allegation that the ALJ ignored evidence that "he was obviously in pain." DE 17 at 16. However, the ALJ discussed Plaintiff's treatment at this facility, including the examination findings that demonstrated muscle tenderness and some pain during straight leg testing (AR 29), before concluding that Plaintiff's treatment records did not reveal significant physical limitations. AR 31. Notably, while the note referenced by Plaintiff indicates that he "[a]ppear[ed] to be in pain" on September 20, 2006 (AR 407), the remaining records from Cookeville Medical Center document significant improvement in his symptoms, including a decrease in muscle tenderness and "some pain but much improved." *See* AR 397, 402, 404-06. Such findings tend to support the ALJ's conclusion that Plaintiff's complaints of pain are "disproportionate to the objective clinical and diagnostic medical evidence." AR 31.

Plaintiff finally cites a letter from Dr. Walter Wheelhouse, who appears to have performed an independent medical examination in connection with one of Plaintiff's previous workers' compensation claims, which purportedly shows that Plaintiff "was disabled by pain caused by the degenerative changes in his back." DE 17 at 15. The court notes, however, that the letter was written in December of 2000, approximately six years before Plaintiff's alleged onset date. AR 325-28. Plaintiff continued to engage in substantial gainful activity until September of 2006, thus making the findings from Dr. Wheelhouse's single examination minimally probative. *See Banks v. Celebrezze*, 341 F.2d 801, 804 (6th Cir. 1965) (noting that substantial work history

---

[5] Plaintiff incorrectly claims that Dr. Leveck found that Plaintiff could sit for just six hours. DE 17 at 15-16.

beyond the alleged onset of impairment would "constitute substantial evidence" that claimant is not disabled). *See also Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 452-53 (6th Cir. 1986) (holding that claimant is not disabled by impairment after performing gainful activity for many years after the alleged onset). The court also notes that Plaintiff himself does not allege that he became disabled due to a back condition until 2006. AR 54.

Similarly, Plaintiff cites an office note documenting an encounter with Dr. Joseph Jestus in June of 2000 that is even less persuasive. Plaintiff claims that Dr. Jestus found that Plaintiff "had some limitations in flexion and extension rotation of his hip" (DE 17 at 14), yet this finding is not contained anywhere in the note cited by Plaintiff. AR 378-79. Furthermore, even assuming that an encounter that took place more than six years before the alleged onset date is relevant to the instant claim, the findings of Dr. Jestus support the ALJ's conclusion that Plaintiff's claims of disabling pain are only partially credible. A straight leg test was negative, motor strength was normal, and an MRI was "very minimally positive over the left L5 nerve root." AR 378-79.[6] Plaintiff's reliance on an office note from Dr. Jestus and Dr. Wheelhouse's independent medical examination is misplaced, and therefore unavailing.

"The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). In evaluating subjective complaints, the ALJ must consider all evidence that would lead to a finding of disability, including "objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1529(a). Plaintiff has identified no such evidence to support his allegations of a disabling

---

[6] Dr. Jestus also concluded that Plaintiff "will retain no permanent impairment as a result of [Plaintiff's] back injuries." AR 187.

condition, which severely undermines his argument. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (affirming ALJ's finding that claimant's subjective complaints were not supported by substantial evidence because no treating physician or other provider diagnosed claimant's pain as severe or disabling). This leaves only his subjective complaints of disabling pain, which are insufficient to establish the existence of disabling symptoms. *See id.* ("[S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability."). Moreover, the ALJ provided a detailed discussion of the evidence that contradicts Plaintiff's allegations of disabling pain. *See* AR 29, 31-32. Accordingly, the court finds that substantial evidence supports the ALJ's credibility determination.

## 2. RFC

Plaintiff next argues that the ALJ erred by concluding that Plaintiff is able to "frequently finger objects with the right upper extremity" (AR 28), and claims that he is instead limited to only "occasional" use of the right upper extremity. DE 17 at 16-17. Plaintiff relies on two pieces of evidence to support this assertion, including a workers' compensation settlement agreement from 2005 in which the parties agreed that Plaintiff's carpal tunnel syndrome resulted in an industrial disability rating of 20.76% to the upper extremity (AR 193),[7] and Dr. Leveck's notation during his consultative examination in 2012 that Plaintiff's "[f]ine motor function might be somewhat impaired due to his wrist problems." AR 455.

Plaintiff's arguments in support of this assertion of error are similarly unpersuasive. An industrial disability rating from a workers' compensation settlement says nothing about any

---

[7] The "industrial disability rating" is not an impairment rating assigned by a physician, but instead a rating agreed upon by the parties. AR 193.

functional limitations that may have resulted from the carpal tunnel injury, thus rendering it minimally relevant in a claim for disability. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.") (citing *Higgs*, 880 F.2d at 863). Even if the industrial disability rating from the workers' compensation settlement had bearing on the RFC in the instant matter, the court notes that Plaintiff's treating physician in connection with the carpal tunnel injury, Dr. Gregory Roberts, opined that Plaintiff had "no impairment secondary to carpal tunnel syndrome as he now has normal sensibility," as well as full range of motion in the wrist and hand, no tenderness, and full strength. AR 329. Such findings do not support more severe restrictions with respect to Plaintiff's upper extremity.

Similarly, Dr. Leveck's statement that Plaintiff's fine motor function "might be somewhat impaired" provides no specific nonexertional limitations that could be incorporated into the RFC. *See Beavers v. Comm'r of Soc. Sec.*, No. 14-cv-12305, 2015 WL 3967055, at *4 (E.D. Mich. June 30, 2015) (holding that physician's statement that claimant should "limit his activities" provided "no basis upon which the ALJ could have derived functional limitations"). *See also Sanders v. Comm'r of Soc. Sec.*, No. 1:15-cv-01268, 2017 WL 710257, at *6 (W.D. Mich. Feb. 23, 2017) (noting that a physician's statement that a claimant may become confused and may have a seizure at work was "so speculative and vague it is impossible to find they are in any way inconsistent with Plaintiff's RFC"); *Carney v. Colvin*, No. 3:12-cv-0744, 2015 WL 5089783, at *8 (M.D. Tenn. Aug. 17, 2015) (affirming ALJ's decision to accord little weight to examining physician's opinion that "fail[ed] to give specifics as to what actual limitations were imposed on [the claimant's] functional ability"). Plaintiff fails to identify any regulation or opinion containing a contrary position and provides no support for his contention that the "record

as a whole support[s] a restriction to only occasional use of the right upper extremity[.]" DE 17 at 17. Plaintiff's argument is thus without merit.

The ALJ based her finding regarding Plaintiff's fingering ability on the opinion of Dr. Roslynn Webb, which was accorded great weight. AR 32, 123. Plaintiff makes no argument regarding the supportability of this opinion, nor does he identify any evidence that controverts the limitations contained in the RFC. This assertion of error is therefore rejected and the decision of the Commissioner is affirmed.

## V. CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record (DE 16) is DENIED. An appropriate Order will accompany this memorandum.

ENTER this 19th day of September 2017.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE